IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIMOTHY MARSHALL,           )
                            )
            Plaintiff,      )
                            )
      v.                    )
                            ) Civil Action No. 13-241J
CAROLYN W. COLVIN,          )
ACTING COMMISSIONER OF      )
SOCIAL SECURITY,            )
                            )
            Defendant.      )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 26th day of March, 2015, upon consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Acting Commissioner of Social Security ("Acting Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, IT IS ORDERED that the Acting Commissioner's motion for summary judgment (Document No. 12) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 10) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well settled that disability is not determined merely by the

presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed his application for DIB on December 10, 2010, alleging disability beginning on July 26, 2010, due to a right wrist problem, back problems and arthritis. Plaintiff's application was denied. At plaintiff's request, an ALJ held a hearing on January 24, 2012, at which he appeared and testified. On March 12, 2012, the ALJ issued a partially favorable decision finding plaintiff disabled as of May 31, 2011, when he turned 55 years old.[1] However, plaintiff requested review of the ALJ's decision finding him not disabled prior to that date. The Appeals Council denied plaintiff's request for review on August 26, 2013, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

Plaintiff, who has a high school education, was 54 years old on his alleged onset date, which is classified as an individual closely approaching advanced age under the regulations. 20 C.F.R. §404.1563(d). Plaintiff has past relevant work experience as a bartender, pressure washer, hand painter and line painter, but he has not engaged in substantial gainful activity at any time since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff was not disabled within the meaning of the Act prior to May 31, 2011. The ALJ first found that plaintiff suffers from the

---

[1] In making the disability determination, the ALJ applied the Medical-Vocational Guidelines, commonly referred to as the "Grids," which are rules that consider a claimant's age, education, work experience and physical ability and direct a finding of disabled or not disabled based on a combination of those factors. The ALJ applied Grid Rule 202.06, which provides that a person of advanced age (55 years and older), who is a high school graduate with no transferable skills and also limited to light work is disabled.

severe impairments of a torn ligament and degenerative joint disease of the right wrist status post fusion, carpel tunnel syndrome, lumbar disc protrusion causing borderline stenosis and radiculopathy and degenerative disc disease of the cervical spine; however, those impairments, alone or in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ next found that plaintiff retains the residual functional capacity to perform light work, but he is precluded from lifting, handling, operating levers and pushing and pulling with his right upper extremity (collectively, the "RFC Finding").

The ALJ concluded that plaintiff could not perform his past relevant work because it exceeded his residual functional capacity. However, based upon testimony by a vocational expert, the ALJ determined that prior to May 31, 2011, plaintiff was capable of performing other work that exists in significant numbers in the national economy, such as a ticket taker or a toll collector. Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act prior to May 31, 2011, but he became disabled on that date when he turned 55 years old pursuant to application of Rule 202.06 of the Grids.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §423(d)(2)(A).

The Social Security Regulations delineate a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must assess: (1) whether the claimant is

currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of his age, education, work experience and residual functional capacity.[2] 20 C.F.R. §404.1520(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff argues that the ALJ's step 5 finding is not supported by substantial evidence for the following reasons: (1) the ALJ failed to properly weigh certain medical opinions; (2) the ALJ did not properly evaluate plaintiff's credibility; and (3) the ALJ should have considered a non-mechanical application of the Grids. For reasons explained below, these arguments are without merit.

Plaintiff first argues that the ALJ failed to properly weigh the medical opinions issued by Dr. Mark Baratz, who treated his right wrist problem, and Dr. Rhonda Mough, a primary care physician from the Veterans Administration Medical Center, who he saw for his back problems. According to plaintiff, the ALJ should have given their respective opinions controlling weight.

Dr. Baratz performed fusion surgery on plaintiff's right wrist in July 2010. (R. 290). Following surgery, Dr. Baratz stated that plaintiff was "doing really well" and prescribed physical therapy. (R. 271-72). By February 28, 2011, Dr. Baratz cleared plaintiff for "light duty capabilities," but restricted him to no lifting more than 20 pounds and only light repetitive work with his right hand. (R. 328).

On May 4, 2011, Dr. Baratz wrote a letter to plaintiff's counsel stating that plaintiff would

---

[2]Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his impairments. 20 C.F.R. §404.1545(a)(1). In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §404.1545(a)(4).

be unable to perform his past work, or similar work, due to limited wrist range of motion and weak grip strength. (R. 291). Dr. Baratz indicated that plaintiff had no impairment in his non-dominant left hand, but his right hand had an impairment of 41%. (R. 291). Dr. Baratz concluded that plaintiff "cannot do full time competitive work and [his] disability will be permanent." (R. 291).

The ALJ gave Dr. Baratz's opinion issued in February 2011, that plaintiff is capable of a range of light work great weight. (R. 30). However, the ALJ gave minimal weight to Dr. Baratz's May 2011, opinion that plaintiff is permanently disabled because he is limited in using his right hand. (R. 32). Contrary to plaintiff's position, the ALJ properly weighed both of Dr. Baratz's opinions and relied upon them in crafting the RFC Finding. In consideration of Dr. Baratz's February 2011 opinion, the ALJ limited plaintiff to light work. Further, even though the ALJ gave Dr. Baratz's May 2011 opinion of permanent disability minimal weight, the ALJ included in the RFC Finding accommodations to account for plaintiff's inability to use his right hand, which was a limitation identified by Dr. Baratz. As the ALJ correctly explained, with the restrictions included in the RFC Finding to account for the functional limitations caused by plaintiff's right hand impairment, the vocational expert testified that jobs still exist in significant numbers in the national economy which the plaintiff can perform. (R. 32, 34, 58). Accordingly, the ALJ properly evaluated both of Dr. Baratz's opinions and appropriately accounted for them in the RFC Finding and the hypothetical question posed to the vocational expert.

Likewise, the ALJ properly evaluated and weighed the opinion issued by Dr. Mough, who completed a form report entitled "Multiple Impairment Questionnaire" indicating that plaintiff could only sit and stand/walk two hours each per day and concluding that he was unable to work due to back pain. (R. 333, 336). According to plaintiff, the ALJ should have given Dr. Mough's opinion controlling weight.

%AO 72
(Rev. 8/82)

- 5 -

A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. 20 C.F.R. §§404.1527(c)(2). Under this standard, the ALJ properly determined that Dr. Mough's opinion was entitled to only minimal weight.[3] (R. 33). As the ALJ explained, Dr. Mough's opinion was contradicted by her own objective findings, the overall minimal objective findings in the record and plaintiff's daily activities. (R. 32).

After reviewing the record, the court finds that the ALJ's evaluation of Dr. Mough's opinion is supported by substantial evidence. According to Dr. Mough's treatment notes, after plaintiff initially consulted with Dr. Mough for back pain on March 7, 2011, he only saw her two other times for his back prior to May 31, 2011, the date the ALJ found him disabled. (R. 303, 308, 310). Although plaintiff complained of back pain, Dr. Mough stated that he declined a referral for physical therapy or a pain management consultation, and he also refused to consider surgical options. (R. 303, 304, 308, 335). By May 2011, Dr. Mough noted that plaintiff was doing some home exercises and walking and reported "he feels that he is doing well." (R. 303). Dr. Mough also stated in May 2011 that plaintiff was "satisfied with current pain management plan and does not require further intervention." (R. 305). Dr. Mough's treatment records do not support her restrictive assessment of plaintiff's physical capabilities on the form report she completed, thus the ALJ correctly determined that her opinion only was entitled to minimal weight.[4]

---

[3] If a treating physician's opinion is not entitled to controlling weight, the ALJ will give it the weight he deems appropriate based on such factors as the nature and extent of the treatment relationship, whether the opinion is supported by medical signs and laboratory findings and whether the opinion is consistent with the record as a whole. See 20 C.F.R. §§404.1527(c)(2)-(4).

[4] The ALJ also pointed out that Dr. Mough's opinion is contradicted by the opinion of Dr. Paul Fox, a non-examining state agency physician who reviewed plaintiff's records in February 2011 and determined that he is capable of light work. (R. 32, 66-68). Plaintiff critiques the ALJ's reliance upon Dr. Fox's opinion, arguing that subsequent medical evidence in the file from Dr. Mough post-dated Dr. Fox's review. Contrary to plaintiff's position, the Regulations specify that state agency medical physicians, such as Dr.

AO 72
(Rev. 8/82)

Plaintiff next argues that the ALJ did not properly evaluate his credibility because the ALJ failed to meaningfully consider the various factors suggested in the Regulations, instead placing too much emphasis on plaintiff's recent lack of aggressive medical treatment and his ability to perform activities of daily living. Plaintiff is incorrect.

As required by the Regulations, the ALJ evaluated plaintiff's credibility by considering all of the relevant evidence in the record, including plaintiff's own statements about his symptoms and limitations, his activities of daily living, the medical evidence of record, the extent of plaintiff's treatment and the opinions of physicians who treated him. See 20 C.F.R. §§404.1529(c)(1) and (c)(3); Social Security Ruling 96-7p. The ALJ then considered the extent to which plaintiff's alleged functional limitations reasonably could be accepted as consistent with the evidence of record and how those limitations affect his ability to work. 20 C.F.R. §404.1529(c)(4). The ALJ concluded that the objective evidence is inconsistent with plaintiff's allegation of total disabling limitations, and thus determined that plaintiff's testimony regarding his limitations was not entirely credible. (R. 30, 32). This court finds that the ALJ adequately explained the basis for his credibility determination, (R. 30-32), and is satisfied that such determination is supported by substantial evidence. See Schaudeck v. Commissioner of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999) (an ALJ may reject the claimant's subjective testimony if he does not find it credible so long as he explains

---

Fox, "are highly qualified . . . physicians . . . who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants . . . as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. §404.1527(e)(2)(i). In addition, the Third Circuit has rejected the argument that the lapse of time between Dr. Fox's review and the subsequent administrative hearing made it inappropriate for the ALJ to rely on the opinion. See Chandler v. Commissioner of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (recognizing that "[t]he Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it"). It is for the ALJ to determine whether subsequent medical evidence impacts the earlier findings. Id., citing SSR 96-6p. After considering the evidence here, the ALJ relied on Dr. Fox's assessment for light work in crafting the RFC Finding, but included additional restrictions to accommodate plaintiff's other credibly established limitations. (R. 30). Accordingly, the ALJ did not err in relying in part on Dr. Fox's opinion.

AO 72
(Rev. 8/82)

why he is rejecting the testimony).

The court further finds no merit to plaintiff's contention that the ALJ discounted his credibility, in part, because of a recent lack of aggressive medical treatment and because he was able to perform activities of daily living. First, "[a]n ALJ may rely on lack of treatment, or the conservative nature of treatment, to make an adverse credibility finding, but only if the ALJ acknowledges and considers possible explanations for the course of treatment." Wilson v. Colvin, 2014 WL 4105288, *11 (M.D. Pa. Aug. 19, 2014); see SSR 96–7p, 1996 WL 374186, *7 (July 2, 1996) (explaining that "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure"). Before making an adverse credibility determination based upon a claimant's non-compliance with medical recommendations, the ALJ must "consider[ ] any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id.

In this case, Dr. Mough stated that plaintiff declined a referral for physical therapy or a pain management consultation, and he also refused to consider surgical options. (R. 303, 304, 308, 335). Plaintiff offered no explanation, however, why he failed to pursue additional or more aggressive treatment for his back pain. Accordingly, the ALJ was entitled to consider plaintiff's lack of treatment for his back in assessing the credibility of his subjective allegations concerning his pain and limitations.

The ALJ also was permitted to consider plaintiff's ability to perform activities of daily living in evaluating his credibility. Although "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity," Smith v. Califano, 637 F.2d

968, 971 (3d Cir. 1981), it is nonetheless appropriate for the ALJ to consider "the number and type of activities" in which the claimant engages. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002). Here, the ALJ observed that plaintiff was able to take care of his own personal needs, prepare meals, perform household chores, shop, operate a motor vehicle and handle his own finances. (R. 32). In accordance with the Regulations, it was proper for the ALJ to consider plaintiff's daily activities in conjunction with the record as a whole, which he did in this case, to determine whether plaintiff's subjective complaints were credible.

Plaintiff's final argument is that the ALJ should have considered a non-mechanical application of the Grids to find him disabled prior to the date when his age category changed. According to plaintiff, the ALJ should have considered whether a borderline age situation existed in this case, suggesting that some case law supports finding him disabled seven months prior to his 55th birthday.

According to 20 C.F.R. §404.1563(b), when the ALJ reviews the age categories, he "will not apply [them] mechanically in a borderline situation." If a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled," the ALJ "will consider whether to use the older age category after evaluating the overall impact of all the factors [in the] case." Id.

The Third Circuit and its district courts have not established a bright line rule for what constitutes a borderline situation. See Morealli v. Astrue, 2010 WL 654396, *8-9 (W.D.Pa. Feb. 23, 2010) (collecting cases). For instance, the Third Circuit has found borderline situations when the plaintiff is only a couple of months shy of the next age category. See Kane v. Heckler, 776 F.2d 1130, 1132-33 (3d Cir. 1985) (48 days is borderline); Lucas v. Barnhart, 184 Fed. Appx. 204, 207 (3d Cir. 2006) (recognizing 106 days as borderline). However, our appellate court has held that

there is no borderline situation where a claimant is within five or six months from the older age category. See Roberts v. Barnhart, 139 Fed. Appx. 418, 420 (3d Cir. 2005). In consideration of this precedent, plaintiff's argument that the ALJ should have found him disabled seven months prior to his 55th birthday is unpersuasive. The ALJ properly applied the Grids and found plaintiff disabled when he turned 55.

In conclusion, after carefully and methodically considering the medical evidence in this case, the ALJ determined that plaintiff was not disabled within the meaning of the Act prior to May 31, 2011, but he became disabled on that date when he turned 55 years old pursuant to application of Rule 202.06 of the Grids. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Therefore, the decision of the Acting Commissioner must be affirmed.

*/s/ Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Julie S. Greenberg, Esq.
Duane Morris
600 Grant Street
50th Floor
Pittsburgh, PA 15219-2502

Samantha Xander, Esq.
Law Offices of Harry J. Binder and Charles E. Binder, P.C.
60 East 42nd Street, Suite 520
New York, NY 10165

Stephanie L. Haines
Assistant U.S. Attorney
319 Washington Street
Room 224, Penn Traffic Building
Johnstown, PA 15901